UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
LIFETIME ENTERTAINMENT SERVICES,      :
                                      :    No. 07 Civ. _____
                Plaintiff,            :
                                      :
                                      :    COMPLAINT
                -against-             :
                                      :
                                      :
VENACA, INC. and IRON MOUNTAIN        :
INTELLECTUAL PROPERTY                 :
MANAGEMENT, INC.,                     :
                                      :
                Defendants.           :
------------------------------------------------------------- x

Plaintiff Lifetime Entertainment Services ("Lifetime") by its attorneys, Sheppard, Mullin Richter & Hampton, LLP, as and for its complaint against defendant Venaca, Inc. ("Venaca") and nominal defendant Iron Mountain Intellectual Property Management, Inc. ("Iron Mountain"), alleges as follows:

## INTRODUCTION

1.   This is an action for a breach of contract against defendant Venaca and Iron Mountain as a nominal defendant.  As a result of Venaca's breaches of its software license agreement with Lifetime, Venaca has caused Lifetime irreparable harm that can only be rectified by this Court's granting Lifetime the preliminary injunctive relief it seeks, as set forth below.

## PARTIES

2.   Plaintiff Lifetime is a joint venture operating as a general partnership under the laws of New York, with its principal place of business in New York, New York.

3.   Upon information and belief, defendant Venaca is a Delaware corporation, with its principal place of business in Princeton, New Jersey.

4.   Upon information and belief, defendant Iron Mountain is a Delaware corporation, with its principal place of business in Boston, Massachusetts.

### JURISDICTION AND VENUE

5.   Jurisdiction is based on 28 U.S.C. § 1332, in that the matter in controversy is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.   Venue is proper in this District under 28 U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

### FACTUAL BACKGROUND

**A.   Lifetime's Business**

7.   Lifetime is a diverse, multimedia company offering high quality original and syndicated entertainment and information programming, and advocating a wide range of issues affecting women and their families. Launched in 1984, Lifetime Television, one of Lifetime's three cable television networks, has become one of the most widely watched cable networks, serving over 96 million households nationwide.

8.   Lifetime's success and survival is based on its ability to manage its digital content and deliver that content on-air to its three networks. In or about late 2004, Lifetime sought to launch a digital media asset management system to allow Lifetime to create, archive and reconfigure its programming more efficiently and less expensively than the traditional production process. To do so, Lifetime had to contract with a software vendor who not only could license to Lifetime the use of such a system, but also could maintain the media asset

management system on a regular basis.

**B.    Venaca**

9.     Venaca is a provider of digital asset management software and licenses the use of its proprietary software to digital media and broadcast companies. In addition, Venaca provides its licensees with maintenance and support of the licensed software and media asset management systems.

**C.    The Master Agreement**

10.    On or about February 24, 2005, Lifetime and Venaca entered into a written agreement for the purchase, license, and maintenance of a media asset management system (the "Master Agreement") for a term of three (3) years.

11.    Under the terms of the Master Agreement, Lifetime agreed to purchase from Venaca the license and use of Venaca's software products and services, including its media asset management software (the "Software"). The services Venaca was to provide under the Master Agreement included the development, integration, installation, testing, maintenance and support of the Software to ensure its functionality as a media asset management system. In addition, pursuant to Exhibit E of the Master Agreement (entitled "Maintenance and Support Agreement") Venaca was obligated to provide Lifetime with all updates and upgrades to the Software at no additional cost, together with updated operating manuals, handbooks for training, installation, maintenance and testing and related materials (the "Documentation").

12.    Pursuant to the "License Grant" to Lifetime set forth in Section 12.1 of the Master Agreement, Venaca granted to Lifetime and its affiliates "a nonexclusive, personal, perpetual, nontransferable license to use the Software in connection with Lifetime's, and/or its Affiliates' operation of their business (the "License"). To enable Lifetime to continue to use the Software and [sic] after termination or expiration of this Agreement, Venaca agrees that the license

granted herein shall survive the termination or expiration."

13. In addition, Venaca agreed in Section 12.2 of the Master Agreement that it would place into escrow one copy of its media asset management system software program, along with any updates and upgrades (the "Source Code") with an escrow agent, and that Lifetime would have access to all Source Code for the Software in escrow should, among other things, Venaca (a) materially fail to perform its obligations under the Master Agreement or (b) cease to actively operate its business or discontinues the sale, licensing or maintenance of the Software in material breach of the Master Agreement (the "Release Conditions").

**D.    The Escrow Agreement**

14. On or about June 25, 2007, and in accordance with the escrow provision of the Master Agreement, Lifetime and Venaca entered into a three-party escrow service agreement (the "Escrow Agreement") with nominal defendant Iron Mountain.

15. Under the terms of the Escrow Agreement, Iron Mountain agreed to act as escrow agent for the Source Code. Exhibit C of the Escrow Agreement set forth the procedures Iron Mountain would use to process any request for release from escrow of the deposited Source Code: First, Iron Mountain would provide written notice to Venaca if Lifetime requested release of the Source Code based on the occurrence of any of the "Release Conditions," which include the Release Conditions already specified in the Master Agreement and an additional Release Condition: "Failure of [Venaca] to function as a going concern or operate in the ordinary course". Second, Venaca would have ten (10) business days from the date of Iron Mountain's written notice to deliver to Iron Mountain contrary instructions representing that a Release Condition has not occurred or has been cured. Finally, if after ten (10) business days Iron Mountain did not receive contrary instructions from Venaca, Iron Mountain would release the deposited Source Code to Lifetime. If, on the other hand, Iron Mountain did receive contrary

instructions from Venaca within the allotted time, Iron Mountain would notify both parties that there is a dispute to be resolved pursuant to the Disputes provision of the Escrow Agreement and would continue to store the deposited Source Code without release pending "(i) joint instructions from [Venaca] and [Lifetime] that accept release of [the Source Code]; or (ii) dispute resolution pursuant to the Disputes provisions of [the Escrow Agreement]; or (iii) *receipt of an order from a court of competent jurisdiction.*" (emphasis added).

E.  **Venaca's Ongoing Breach of the Master Agreement**

16.  Commencing in mid-October, 2007, Venaca materially breached, and continues to breach, the terms of the Master Agreement – namely, by ceasing to provide to Lifetime the level of maintenance and support for the Software as required under the Master Agreement and the Documentation for Software system updates as required under Exhibit E to the Master Agreement. First, Venaca's support and maintenance were compromised when several key Venaca employees who serviced the Software were laid off. Lifetime received deteriorating levels of support until October 31, 2007, when Venaca's support and maintenance ceased entirely.

17.  Lifetime's complete operational reliance on Venaca's digital media asset management system means that any bug or malfunction with the Software, or even confusion regarding operations or configuration of the Software, results in delays and additional costs to Lifetime in preparing its programming content for on-air broadcasting. For example, Lifetime does not have the ability, without Venaca's support, to configure and trouble-shoot technical components of the Software, such as encoders, application servers and ingest stations -- all of which are critical components to Lifetime's digital workflow of broadcast content. In a worst case scenario, Venaca's continued failure to provide support could result in damaged files or

even lost access to archived media masters managed by the Software, assets which are the foundation of Lifetime's business.

18. From a broadcaster perspective, Lifetime's situation became immediately dire because it has no adequate digital contingency for the Software, a system integral to its daily operations. It was with those concerns in mind, that Lifetime immediately retained an independent consultant, on or about November 13, 2007, to perform some of the services that Venaca was failing to provide, including but not limited to preparing the Documentation so that Lifetime would be able to continue utilizing the Software. Without Venaca's assistance, however, Lifetime is unable to fix bugs or address even minor Software changes which routinely arise through the course of business. To make matters worse, Lifetime is unable to cover Venaca's maintenance and support required by the Master Agreement, because without access to the Source Code, Lifetime cannot perform those functions itself or retain a third-party, other than Venaca, to service the Software.

19. Lifetime has repeatedly attempted to work and negotiate with Venaca to resolve these material breaches, and in response, Venaca has only conveyed an inability to remedy these breaches going forward. Among other things, it has become apparent to Lifetime that Venaca has lost or laid off a majority of its personnel in the last four (4) months.

20. Therefore, on December 4, 2007, in accordance with the procedures set forth in Exhibit C to the Escrow Agreement, Lifetime was forced to send a request to Iron Mountain for the release of the deposited Source Code from escrow on the basis that the Release Conditions had been met; namely, "(i) Breach of the [Master Agreement] by Venaca for the [Source Code] covered by the Escrow Service Agreement (*inter alia*, Venaca has failed to provide maintenance or support [since approximately October 30) and (ii) failure to function as a going concern or

operate in the ordinary course."

21.     Although Venaca has a right under the Escrow Agreement to issue contrary instructions to Iron Mountain, it has not done so to date, and Lifetime is currently suffering irreparable harm because of Venaca's breach of its obligations under the Master Agreement, and cannot wait until the period set forth in the Escrow Agreement for Venaca to issue contrary instructions without risking the serious consequences that it has and continues to face.

F.      **Venaca's Breaches Continue to Subject Lifetime to Irreparable Harm and Damages**

22.     As a result of Venaca's failure to perform under the Master Agreement, Lifetime has been and continues to be subject to irreparable harm and increasing damages. Among other things, Venaca's failure to maintain and support the Software has made Lifetime's digital media asset management system susceptible to operational errors, resulting in delays in launching programming and increasing costs. Moreover, Venaca's continued failures could imminently require changes to air schedules and result in a significant outlay of costs and loss of good will due to Lifetime's inability to access content, such as archived media masters. Lifetime's business as a media company and cable programmer is growing increasingly complex as it delivers media in digital formats, through new delivery mechanisms and new platforms. Lifetime's inability to modify its core digital media asset management system, specifically the Software, to address this dynamic business environment puts Lifetime in an inferior strategic and competitive position. Should the Software fail and remain irreparable, not only will Lifetime incur the significant costs of implementing an entirely new system, but Lifetime would lose over a year in time developing and implementing replacement technology and processes and significant momentum in efficient integration, packaging and delivery of digital media content relative to its competition.

23. In addition to imminent intangible damage and potential significant expenditures, Lifetime has suffered and continues to suffer substantial out-of-pocket monetary damages because it has been forced to cover under the Master Agreement by (a) employing the independent consultant to prepare the Documentation that Venaca was obligated to provide under the Master Agreement and (b) utilizing alternative processes to manage digital assets when the Software functionality fails, some of which are significantly more expensive and time consuming than achieving the same results using the Software.

## FIRST CAUSE OF ACTION

### (Breach of Contract against Venaca)

24. Lifetime repeats and realleges the allegations of paragraphs 1 through 22 above as if fully set forth herein.

25. Lifetime and Venaca entered into a valid and binding written contract, the Master Agreement, wherein Lifetime agreed to pay Venaca compensation in return for its promise to perform its duties and obligations under the contract.

26. Lifetime performed its duties by promptly and timely paying Venaca the compensation owed to it pursuant to the terms of the Master Agreement.

27. Pursuant to the terms of the Master Agreement, Venaca agreed to develop, integrate, install, test, maintain and support the Software in order to function as a media asset management system which would meet Lifetime's business needs.

28. On or about, and continuing since October 2007, Venaca breached the Master Agreement by failing to provide any such maintenance and support to Lifetime's media asset management system pursuant to the terms of the parties' contract.

29. Venaca has further breached the Master Agreement by failing to provide the

Documentation to Lifetime for critical system updates as required by the terms of the Master Agreement.

30. The foregoing conduct of Venaca constitutes, *inter alia*, a material breach of its obligations under Section 11 of the Master Agreement including: Section 11.2 providing for maintenance and support for the Software in accordance with the Order Schedule and the Maintenance and Support Agreement, attached as Exhibit A and Exhibit E to the Master Agreement respectively; and Section 11.3 (entitled "Venaca Representations") in which Venaca represented, *inter alia*, that "(b) the Services provided hereunder shall be performed in a good and workmanlike manner, free from material errors or defects in design, material and workmanship."

31. These material breaches of the Master Agreement have caused irreparable harm to Lifetime by denying Lifetime access to critical support and updates to the Software, upon which Lifetime's entire network of digital media relies.

32. Lifetime has no adequate or complete remedy at law because the Software is unique and cannot readily be replaced. Without proper maintenance and support, Lifetime faces imminent risk that the Software will malfunction impeding Lifetime's ability to engage in its core business -- broadcasting content on-air. The damage caused by Venaca's actions is not susceptible to any ready or precise calculation in that such damage involves impairment of the integrity of Lifetime's television networks, potential loss of goodwill and business opportunities such that monetary damages alone cannot adequately compensate Venaca's breaches.

33. Additionally, Lifetime has suffered and continues to suffer substantial monetary damages because it has been forced to cover under the contract by employing a consultant to prepare the documentation that Venaca was obligated to provide under the Master Agreement.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Lifetime requests the following relief:

1.  A declaration that Venaca has materially breached the Master Agreement;

2.  A declaration that the Release Conditions (as defined in either the Master Agreement or the Escrow Agreement) have occurred, giving rise to Lifetime's right to release of the Source Code;

3.  An Order preliminarily and permanently enjoining Venaca from issuing contrary instructions to Iron Mountain to not release the Source Code to Lifetime;

4.  An Order directing Iron Mountain to release to Lifetime the deposited Source Code as requested by Lifetime under the Escrow Agreement;

5.  Judgment against Venaca in an amount of not less that $100,000, for such damages as Lifetime has sustained as a consequence of Venaca's breach of contract, together with interest;

6.  An award to Lifetime of the costs and disbursements of this action, together with reasonable attorney's fees; and

7.  Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
December 14, 2007

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____

Kevin W. Goering
Kesari Ruza
Bardia Bakhtari
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 332-3800
Facsimile: (212) 332-3888

*Attorneys for Plaintiff Lifetime Entertainment Services*